**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CASE NO. 1:23-CR-00044** |
| Plaintiff, | : | **JUDGE MICHAEL BARRETT** |
| v. | : | **UNITED STATES' SENTENCING MEMORANDUM REGARDING MONAE MOSLEY** |
| **MONAE MOSLEY,** | : | |
| Defendant. | : | |

The United States Attorney's Office submits this sentencing memorandum with respect to Monae Mosley. Based on the factors set forth in 18 U.S.C. § 3553(a) and the facts discussed below, the United States recommends a sentence of 18 months of imprisonment, along with a term of supervised release, an order of restitution, and a $100 special assessment.

### I. THE COURT'S TASK AT SENTENCING.

After the Supreme Court's landmark decision in *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are advisory, and judges must now impose sentences in accordance with 18 U.S.C. § 3553(a), which describes the factors to be considered. A district court must still use the Guidelines to calculate a defendant's sentencing range and consider the range when devising a sentence. *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 596 (2007).

After calculating the advisory Guidelines range, the Court must consider that range along with all the factors listed in 18 U.S.C. § 3553(a) before arriving at the final sentence. These factors include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

>   (2) the need for the sentence imposed--
>
>>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>>   (B) to afford adequate deterrence to criminal conduct;
>>
>>   (C) to protect the public from further crimes of the defendant; and
>>
>>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>   (3) the kinds of sentences available;
>
>   (4) . . . the sentencing range established . . . [by the Guidelines];
>
>   (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . that . . . is in effect on the day of sentencing[;]
>
>   (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>   (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## II. NATURE OF THE OFFENSE.

### Arrow Keys and Mail Theft in General

In general, the U.S. Postal Service (USPS) uses blue collection boxes in public areas to collect outgoing mail. As a result, criminals routinely target USPS mail to steal checks for the purpose of altering them and depositing them at financial institutions. Criminals typically steal these checks from USPS blue mail collection boxes through the use of a stolen proprietary USPS key which opens these boxes, commonly referred to as an "Arrow Key." In cases where personal checks are stolen, the pen ink is often removed by criminals in a process called "washing" and then re-written into the name of a person who deposits the altered check into their checking account. Persons who engage in this deposit activity are known as money mules.

Checks are commonly washed by using a chemical, specifically, acetone (nail polish remover) to wash away the pen ink used to write information on a check without damaging the

2

check or its higher quality ink. Other methods include using razor blades or erasers to remove the ink, although these methods will typically damage the check more than an effectively executed chemical washing. The criminal will then add unauthorized information on the check so it can be deposited into a money mule's account. Sometimes the check's information will also be saved (either in a ledger, electronic device, or electronic storage media) to enable the creation of counterfeit checks which are printed using a computer, printer and blank check stock.

Once the check has been washed and re-written, the recruiter will co-ordinate with the mule to have the check placed into the mule's account. If the forgery is not detected by the bank and funds are credited to the mule's account, the money is then removed from the bank account via transfer, purchases, or cash withdrawals before the check's alteration is noticed, the bank alerted, and the charges reversed. Business checks are often altered in a similar manner, however sometimes the depositor will instead falsely endorse the check to his/herself without altering the checks face. Money mules and those they work for often use mobile deposits for these checks, because it is believed the computers that approve checks deposited by mobile application are less likely to detect alteration than a person. The person who recruits money mules into the schemes are referred to as recruiters.

In 2022 and 2023, the USPS has seen a sharp increase in numerous postal carriers being robbed of the arrow keys for the blue collection boxes. Many of these robberies have occurred at gunpoint. Others have illegally purchased arrow keys from USPS employees. This loss of arrow keys has led to a corresponding increase in mail theft from collection boxes and check fraud.

In the Cincinnati and Dayton areas alone, there have been arrow keys stolen from postal carriers through a firearm or assault on more than 20 occasions in 2022 and 2023.

**Mail Theft by the Defendants**

This case is part of a wave of mail theft and bank fraud that has victimized the Greater Cincinnati area over the past two years. Defendant Mosley is part of a group that has illegally used USPS arrow keys to steal U.S. mail and engage in bank fraud. The checks stolen from the mail are then washed and fraudulently cashed. As noted in the PSR, Monae Mosley is tied to this scheme in two specific incidents.

**The Springfield Arrest**. On February 23, 2023, local police spotted a suspicious Honda parked in front of two USPS blue boxes at Brentwood Plaza. As police followed, the car (driven by Arnando Miller) pulled into a driveway on 1009 Vacationland Avenue, waited for the police to pass, and then eventually pulled out and drove the other direction. Defendants Monae Mosley, Arnando Miller, and Derray Kennedy were in the car when it was eventually stopped. Officers went back to the driveway at 1009 Vacationland Avenue and found that mail stolen from the USPS blue boxes had been dumped under a car. The stolen checks recovered had a face value of $25,241.55. When the car was stopped a second time, codefendant Derray Kennedy was placed into a police cruiser. The police later found that Kennedy had hid a stolen USPS arrow key on the floor of the police cruiser. (PSR, pars. 33-34)

**The Daly House Search**. As part of the overall investigation in early 2023, agents did two trash pulls from a house at 8101 Daly Road. Furthermore, a search warrant was executed at the house in March 2023. Agents recovered stolen mail and checks with a face value of $217,566.27. Mosley's fingerprints were found on some of the stolen checks. (PSR, par. 32) Agents also recovered from codefendant William Lindsay's belongings the key tag from a postal carrier assault and robbery that occurred days earlier in the Fay Apartments.

4

As for the loss amount, Mosley is responsible for $242,807.82 in intended losses: (1) the $217,566.27 in intended loss from the Daly Road house checks; and (2) the $25,241.55 in intended loss from the Springfield Township arrest. The intended losses represent the <u>face value</u> of various checks that were stolen from the mail and recovered from the defendants, which is a conservative estimate compared to the potential loss. There is no restitution or actual loss assessed to Ms. Mosley.

### III. SENTENCING GUIDELINES.

A district court must use the Sentencing Guidelines to calculate a defendant's sentencing range and consider the range when devising a sentence. *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 596 (2007).

According to the PSR, the base offense level is 6, and 10 levels are added due to the loss amount of $242,807.82. (PSR, pars. 42-43.) Two levels are added because the offense involved 10 or more victims. (PSR, par. 44). The PSR grants Mosley a 2-level reduction for her role in the offense as a minor participant, however, the parties had agreed to a 3-level reduction for her reduced role. After acceptance of responsibility, the total offense level in the PSR is 13.

The parties had agreed to a 3-level reduction for the role in the offense. If the Court were to grant that reduction, the subtotal offense level would be 15. The defendant would then receive 2 levels off for acceptance of responsibility, but the 3rd point would not be available because the subtotal was less than 16. <u>Therefore, regardless of whether the role in the offense is a 2-level or 3-level reduction, the final offense level would still be 13</u>.

5

The PSR calculated 5 criminal history points for Mosley, so the PSR listed Mosley as being in Criminal History Category III. (PSR, par. 70.) With an offense level of 13 and a Criminal History Category of III, the guideline range is 18-24 months.

IV. THE GOVERNMENT'S RECOMMENDATION.

As shown in the offense conduct, Mosley certainly was a willing participant in the mail theft scheme and was involved in both stealing from the blue boxes on one occasion and some of the processing of checks at the Daly Road house. Based on the circumstances set forth in the PSR and in this sentencing memorandum, as well as the factors in Section 3553(a), the government recommends that the Court impose a sentence of imprisonment of 18 months for defendant Monae Mosley, a term of supervised release, and a $100 special assessment.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

s/Timothy S. Mangan
TIMOTHY S. MANGAN (069287)
Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6385
E-mail: Timothy Mangan@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum was served this 1st day of April, electronically upon all counsel of record.

                                                s/Timothy S. Mangan
                                                TIMOTHY S. MANGAN (069287)
                                                Assistant United States Attorney